**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Bruce Todd MAINE, Defendant-Appellant.**

**No. 107–69.**

United States Court of Appeals
Tenth Circuit.

Nov. 10, 1969.

Rehearing Denied Jan. 2, 1970.

Fahy, Senior Circuit Judge, dissented.

Elmer Lee Hamby, Denver, Colo., for appellant.

Gordon Allott, Jr. (James L. Treece, U. S. Atty., and Milton C. Branch, Asst. U. S. Atty., on the brief), for appellee.

Before LEWIS, Circuit Judge, FAHY, Senior Circuit Judge,* and SETH, Circuit Judge.

LEWIS, Circuit Judge.

This is an appeal from a judgment and sentence entered by the United States District Court for the District of Colorado after a jury found appellant guilty of unlawfully refusing to submit to induction into the armed forces, a violation of 50 U.S.C.App. § 462. Appellant contends his order of induction to have been void as a matter of law for procedural failures occurring both before and after his admitted refusal to accept induction. The relevant facts may be summarized.

* Of the United States Court of Appeals for the District of Columbia Cicruit, sitting by designation.

After first exhausting a student deferment, appellant was classified by his Local Board as I–A on December 1, 1967. No appeal was taken. On May 31, 1968, following orderly procedures including notification of physical acceptance, appellant was mailed an Order to Report for Induction on June 20, 1968. After receiving the induction order, appellant appeared at his Local Board on June 13, 1968, and requested a Special Form for Conscientious Objectors (Selective Service Form 150). This form was completed and returned to the Local Board on June 17, 1968, along with an attached letter. The defendant signed part B of the form [1] and explained the nature of his religious beliefs as follows:

> God is the creator of all things. Therefore all authority is derived from God alone. Because he is the first and the supreme authority all human obligations are manifest in him and fulfilled only through him * * *
>
> I believe in force only as a means of restraint. That is without any physical or moral damages [sic] inflicted upon the person or persons * * * [against whom] this restraint is being enforced.

The filing further indicated that prior public expression of appellant's religious beliefs had been made on Sunday, June 16, 1968, before the assembled congregation of the First United Presbyterian Church of Englewood. An attached letter from the minister of that church stated that the congregation, after hearing the appellant express his beliefs, had voted to support him in his claims for conscientious objector status. Appellant also stated that "[t]he lateness of this form is due to the misunderstanding that took place between Local #13 [the appellant's Local Board] and myself concerning the results of my physical."

The Local Board refused to reopen appellant's classification noting in its minutes: "6/18/68 [form] 150 reviewed by the Board, decision no change in status resulting from circumstances over which registrant has no control, therefore Local Board is without authority to re-open classification or cancel induction order." Such action, so says appellant, was violative of 32 C.F.R. 1625.2 which provides in pertinent part:

> *When registrant's classification may be reopened and considered anew.—* The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided, in either event, that classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant has no control.

■■ In interpreting the cited regulation, this court has twice held that a crystallization of beliefs of conscientious objection, occurring after the issuance of an induction order, can constitute "a change in status resulting from circumstances over which the registrant had no control." Keene v. United States, 10 Cir., 266 F.2d 378; Martinez v. United States, 10 Cir., 384 F.2d 50. The rule established by these cases is grounded on a recognition of the competing considerations inherent in the problem at which Regulation 1625.2 is directed. On the one hand, the nature of the function discharged by the Selective Service System demands that Local Board action with respect to individual classifications be finalized at a predictable and discrete point in the administrative process. The date of the issuance

---

1. Stating that he was "conscientiously opposed to war in any form" and also opposed to noncombatant military training.

of an induction order is the obvious juncture at which to set this finalization. On the other hand, the need to prevent the manifest injustices which may obtain from undifferentiated application of this cut-off point requires the availability of an administrative remedy when an individual registrant is presented with conditions over which he has no control. No "condition" save those designated by law as bearing on a registrant's draft status would justify the reopening of a classification under Regulation 1625.2. Conversely, no circumstance not subjectively controlled which could, under law, affect the draft status of a registrant can justifiably be excluded from consideration. However, this rule has no controlling application to this aspect of the case at bar. The appellant here did not, either through his conduct or statements, reveal in any substantial way that his religious beliefs —however sincere they may have been— took final shape and became compelling upon him at some time after he had received the induction order of May 31, 1969. Nowhere in the form 150 submitted June 17 to the Board did appellant state the time of fruition of his conscientious objection to military service.[2] Moreover, in the letter attached to the form, he stated that the "lateness" of his application was due to confusion over the results of his physical examination. On the basis of these facts, the Local Board was fully justified in proceeding as it did. Its action finds support both in 32 C.F.R. 1625.1(b) which requires that a registrant must report any information affecting his classification within ten days and in this court's indication that this regulation is applicable to the crystallization of religious beliefs. Keene v. United States, *supra*, 266 F.2d at 384.

Appellant's contention that he was not accorded procedural due process within the Selective Service after his refusal to submit to induction is somewhat tenuous for no procedural irregularity appears in the Selective Service file. Appellant asserts, however, that the record testimony reflects prejudicial noncompliance with Local Board Memorandum No. 14, issued November 19, 1948, as amended October 12, 1965, by the National Director of Selective Service. Memorandum No. 14 provides in pertinent part:

1. Purpose.—The purpose of this memorandum is to inform local boards that the procedures to be followed when a registrant, after being delivered to the joint examining and induction station, refuses to submit to the physical examination or mental test, or when a registrant fails to report for, or submit to induction.

\*     \*     \*     \*     \*     \*

8. Local Board Procedure.—Except as otherwise provided in Paragraph 9 of this memorandum, when the registrant's local board receives a copy of the letter of notification of refusal to submit to induction, it shall immediately report the delinquent registrant to the United States Attorney on a delinquent registration report (SSS Form #301). A copy of the completed SSS Form #301 and the copy of the letter of notification shall be filed in the delinquent's cover sheet SSS Form #101.

9. Forwarding cover sheets of certain delinquent registrants to State Director of Selective Service for review.—

(a) Whenever a registrant who has claimed that he is a conscientious objector or minister of religion, and who has been ordered to report for induction, fails to report for, or submit to, induction, the local board shall forward the delinquent registrant's cover sheet to the State Director of Selective Service for a review and a determination as to whether the registrant shall be reported to the United States At-

---

2. At trial, Maine testified that his beliefs became "compelling" at a time "shortly after the death of Martin Luther King" in April, 1968.

torney for prosecution. Each cover sheet shall be accompanied by a memorandum or letter of transmittal indicating that it is being forwarded under the provisions of this memorandum.

(b) In such cases the local board shall not report the registrant to the United States Attorney on delinquent registrant report (SSS Form #301) unless the State Director of Selective Service determines that the registrant shall be reported for prosecution.

■ Pointing to the record facts that appellant refused induction on June 20, 1968, that a delinquent registrant report was issued and appellant's file forwarded to state headquarters on July 10, and that Local Board did not meet between such dates, appellant argues that the "local board" did not comply with ¶ 9(a) of the cited Memorandum. The argument is patently without merit for the routine action of the Board clerk, acting under general authorization of the Board to comply with applicable regulatory directives, as she here did, is the action of the Board.

Finally, appellant urges that the review of his file at the state level was limited to a consideration of procedural defects and thus the state director did not exercise a true discretion as contemplated by ¶ 9(a) of Memorandum 14 and the power, so says appellant, contained in 32 C.F.R. 1625.3, 1626.61,[3] and 1627.1. We cannot accept appellant's premise that the record testimony so limits the extent of the state review. The Manpower Officer of the Colorado Selective Service System testified directly:

Q. After this file was received in state headquarters what action was taken by you or any member of the State Selective Service System?

A. It was reviewed for procedural —for compliance with regulations by the chief clerk of the manpower division and I looked through the file and the state director looked through the file.

Q. After it was reviewed, what was done?

A. A decision was made to refer it to the United States Attorney for prosecution.

■ Although this testimony establishes that appellant's file was reviewed for procedural regularity, a necessary element of proper review, it does not support the conclusion that the state director did not fulfill his complete function. To the contrary, it is apparent that the file was reviewed by at least three authoritative officers before it was referred to the United States Attorney for further consideration.

The judgment is affirmed.

FAHY, Senior Circuit Judge (dissenting):

On May 31, 1968, the Local Board mailed to appellant an Order to Report for Induction effective June 20, 1968. On June 13, 1968, appellant for the first time requested a Special Form for Conscientious Objectors (Selective Service Form 150), which he completed and returned to the Board on June 17, 1968. The record contains much to support the merits of his claim. The issue as to that, however, is not now before us, for the Local Board never considered appellant's claim on its merits. Instead it determined that his classification should not be reopened, noting in its minutes that there was,

no change in status resulting from circumstances over which registrant had no control, therefore Local Board is without authority to re-open classification or cancel induction order.

The Board apparently concluded that a conscientious objector exemption does

---

3. 32 C.F.R. 1626.61(a): When either the Director of Selective Service or the State Director of Selective Service deems it to be in the national interest *or necessary to avoid an injustice*, he may, at *any time*, request an appeal board to reconsider any determination made by it, stating his reasons for requesting such reconsideration. * * * (emphasis added).

not fall within the provisions of Regulation 32 C.F.R. 1625.2 which permits the Local Board to reopen a registrant's classification even after it has mailed him an Order to Report for Induction where "there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

In so concluding the Local Board misapplied the Regulation. Although there is a division of authority among the circuits on this point,[1] conscientious objection has been held by this court, as the present opinion of the court states, to be a circumstance over which the registrant has no control.[2] *Keene* also interpreted Regulation 32 C.F.R. 1625.2 together with Regulation 32 C.F.R. 1625.1 (b), which requires a registrant to report information affecting his status within ten days, to mean that the registrant must demonstrate that his conscientious objection conviction matured after the Order of Induction to warrant reconsideration of his classification by the Board.

There is evidence in the record, as the court points out, that appellant's convictions of conscientious objection crystallized prior to the date of his induction order,[3] and that he failed to press his claim because of a misunderstanding about his physical eligibility for military service. On the basis of this evidence, the court holds that the Local Board's refusal to reopen the appellant's classification was justified, though the Board misconceived its authority under the Regulations.

There is support in *Keene* for this court's decision finally to dispose of the case despite the Local Board's misunderstanding of Regulation 1625.2. In *Keene*, however, "it [was] unmistakably plain that the registrant's change in status due to a change in conscience did not occur after the induction notice was mailed." No other conclusion was possible in *Keene* because the registrant there expressed his convictions to the Local Board in a letter dated on the very day his induction order was mailed. The evidence seems to me not so compelling in our case. Appellant did not indicate by any communication to his Local Board when his convictions matured, nor was there any independent, objective evidence on the subject. It was not until after he had received his induction notice, on June 16, 1968, that he publicly declared to the congregation of his church that he had formed such a belief. Moreover, appellant's pastor informed the Board that appellant had struggled with his decision for a couple of years and only recently had come to a definite decision.

As the Local Board gave no consideration to the time when the appellant's conscientious objector convictions matured, and because it is possible that had they done so they might have been persuaded that his claims were in fact timely, I do not find the *Keene* case controlling. I would apply to our case the rationale of United States v. Gearey, 368 F.2d 144, 150 (2d Cir. 1966):

> The realization that induction is pending, and that he may soon be asked to

1. *Compare*, United States v. Stoppelman, 406 F.2d 127 (1st Cir. 1969), citing with approval, United States v. Blaisdell, 294 F.Supp. 1303 (D.Me.1968), also citing Keene v. United States, 266 F.2d 378 (10th Cir. 1959); United States v. Gearey, 368 F.2d 144 (2d Cir. 1966), aff'd on remand, 266 F.Supp. 161 (S.D. N.Y.1967), aff'd, 379 F.2d 915 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368; Ehlert v. United States, Crim. No. 21,930 (9th Cir. Sept. 11, 1968), with United States v. Al-Majied Muhammad, 364 F.2d 223 (4th Cir. 1966);

Davis v. United States, 374 F.2d 1 (5th Cir. 1967); United States v. Jennison, 402 F.2d 51 (6th Cir. 1968), cert. denied, 394 U.S. 912, 89 S.Ct. 1024, 22 L.Ed.2d 225 (1969); United States v. Schoebel, 201 F.2d 31 (7th Cir. 1953). Cf. United States v. Kroll, 400 F.2d 923 (3rd Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 728, 21 L.Ed.2d 713 (1969).

2. Keene v. United States, 266 F.2d 378 (10th Cir. 1959); Martinez v. United States, 384 F.2d 50 (10th Cir. 1967).

3. See footnote 2 of the majority opinion.

take another's life, may cause a young man finally to crystallize and articulate his once vague sentiments. The long history of exempting conscientious objectors * * * indicate[s] to us a strong Congressional policy to afford meticulous procedural protections to applicants who claim to be conscientious objectors, * * *. Implementation of that policy requires that any individual who raises his conscientious objector claim promptly after it matures—even if this occurs after an induction notice is sent but before actual induction—be entitled to have his application considered by the Local Board. In light of this, the Local Board must first determine when an appellant's beliefs matured.[4]

For our court to make an independent judgment on the record before us seems to me not to give weight to the narrow scope of judicial review over Local Board decisions of the character here involved.[5] Indeed, in a case decided after *Keene* we held that,

> If the Board states reasons for its action * * * and these reasons are found to be legally insufficient to support the Board's classification, the classification should be found to be

without a basis in fact. This is true even if an independent search of the record discloses an adequate basis in fact to support the action of the Board, * * *.

Owens v. United States, 396 F.2d 540, 542–543 (10th Cir. 1968), cert. denied, 393 U.S. 934, 89 S.Ct. 294, 21 L.Ed.2d 270.[6]

In concluding that this case should be remanded, I do not mean to say that appellant is in any way relieved of his burden on demonstrating when his convictions matured. However, as the Board did not consider his claim of exemption on its merits, I think appellant should be afforded the benefit of any doubts arising from the present state of the record. A remand is all the more appropriate when it is realized that the state of a person's mind is rarely susceptible to objective proof. The standard to be applied is a difficult one to meet. I think appellant should have the opportunity to do this at the Board level instead of our determining his claim on this appeal from his criminal conviction.

I would reverse the conviction and remand the case to the Local Board for reconsideration in a manner not inconsistent with the views above expressed.[7]

4. The case was remanded to the District Court to determine whether the Local Board might have rejected the registrant's claim on the merits. The District Court ruled, after a hearing, that the Board had declined to reopen only because they did not believe the registrant to be sincere, 266 F.Supp. 161, and its ruling was affirmed on appeal, 379 F.2d 915. *See*, United States v. Stafford, 389 F.2d 215 (2d Cir. 1968), where the court remanded as in *Gearey* but held that if it were determined that the Local Board rejected the registrant's claim as untimely, the indictment must be dismissed until the Local Board makes a decision on legally sufficient grounds. *See, also*, United States v. Blaisdell, 294 F.Supp. 1303 (D.Me.1968); United States v. Hinch, 292 F.Supp. 696 (W.D.Mo.1968); dissenting opinion, United States v. Jennison, 402 F.2d 51, 54 (6th Cir. 1968), cert. denied, 394 U.S. 912, 89 S.Ct. 1024, 22 L.Ed.2d 225 (1969); *cf.* Boswell v. United States, 390 F.2d 181 (9th Cir. 1968).

5. "It is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies." Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 395, 99 L.Ed. 428 (1955).

6. *See, also*, Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436 (1955), where the Supreme Court held that a legally insufficient basis for classification "must vitiate the entire proceedings." To the extent that these cases are inconsistent with *Keene* they would seem to be controlling.

7. I find it unnecessary to decide whether the State Director complied with Paragraph 9 of Memorandum No. 14. However, I think there is a serious question whether the State Director fulfilled his function of conducting a "review and determination" by merely looking through the file for procedural irregularities.