**UNITED STATES of America ex rel. Douglas Heath BROWN, Petitioner-Appellant,**

v.

**Stanley RESOR, Secretary of the Army, Respondent-Appellee.**

No. 74–70.

United States Court of Appeals, Tenth Circuit.

July 21, 1970.

Rehearing Denied Oct. 2, 1970.

Sara-Jane M. Cohen, Boulder, Colo., for petitioner-appellant.

Leonard W. D. Campbell, Montrose, Colo. (James L. Treece, U. S. Atty., and David L. Osborn, Asst. U. S. Atty., were on the brief) for respondent-appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

LEWIS, Chief Judge.

Petitioner Brown was inducted into the United States Army on December 5, 1969, and thereafter and on the same day filed a petition for a writ of habeas corpus in the United States District Court for the District of Colorado alleging that his induction was based on an invalid induction order issued under the Universal Military Training and Service Act. The district court, utilizing accelerated procedures, promptly conducted a full trial, determined Brown's contentions to be without merit, and denied relief. This appeal followed and was submitted, after full briefing and argument, on February 25, 1970. We have held decision of the case pending the guidance of the Supreme Court in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362, decided June 15, 1970. By permissive order of this court Brown had been transferred to Fort Lewis, Washington, pending his appeal with the proviso that he be required to perform "only that type of service which is comparable to civilian service performed by one under 1–O classification" unless the petitioner voluntarily submitted to other types of service.

Brown was initially ordered to report for induction on July 11, 1969, by Indiana Selective Service Local Board No. 250.[1] This order was subsequently postponed until December 5, 1969. In the interim, on September 15, Brown submitted to the local board a Form 150, the special form for conscientious objectors. In the form, Brown alleged that because of his religious training and beliefs he was opposed to participation in war in any form and further that he was opposed to noncombatant training and service. He stated that his beliefs were acquired in church and at home in South Bend, Indiana, and that the filing of the Form 150 was the "final development" of his beliefs. The board met on October 14, 1969, and declined to reopen Brown's classification, stating that it had reviewed the Form 150 and considered "no change warranted."

Section 1625.2 of the Selective Service Regulations provides:

1625.2 *When Registrant's Classification May be Reopened and Considered Anew.*—The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not

---

1. Brown was attending school in Colorado prior to his induction.

be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

As we most recently held in United States v. Maine, 10 Cir., 417 F.2d 951, the emergence of beliefs of conscientious objection after an induction order has been issued can constitute "a change in status resulting from circumstances over which the registrant has no control" within the meaning of the quoted regulation. As we also indicated in *Maine*, to be granted a reopening under the regulation the registrant must not only present facts which, if true, would justify his classification as a conscientious objector but must also make prima facie allegations establishing the post-induction order crystallization of those beliefs. As mandated by the exacting language of the regulation, the board must "specifically find" that the newly sought classification is founded in these two elements; only then does the regulation contemplate a reopening of the classification.

█ The converse of this rule is also mandated by the language of the regulation and must therefore be applied with equal effect. Where a claim to conscientious objector status is denied consideration after issuance of an induction order the board must, as the regulation dictates, make specific findings that those beliefs are either facially insufficient or emerged before receipt of the induction order and consequently did not constitute a change in status over which the registrant had no control. A reopening of a classification after issuance of an induction order absent specific affirmative findings satisfying these factual prerequisites would not be in accord with the regulations. A refusal to reopen absent findings which negative these prerequisites necessarily shares the same defect.

█ In this case, the registrant in the Form 150 has alleged that the nature of his religious convictions prevents his participation in war and service in the military, outlined the institutional and personal sources of these convictions and denominated the filing of the Form 150 as their "final development." These assertions establish the prima facie sufficiency of both the late reopening and the substantive claim to conscientious objector status, and were not met by the Board by a specific finding, as in United States v. Stone, 10 Cir., 422 F.2d 968, that there had been no change of circumstances beyond the registrant's control.

██ The local board's response to registrant's Form 150 was merely to note in his file, "no change warranted." At least two meanings could be derived from this entry. The board could have found the designation of the Form 150 as the "final development" of registrant's religious views insufficient evidence of late crystallization or it could have considered the claim on the merits without reopening. The latter procedure—consideration on the merits without formal reopening—is patently invalid. Mulloy v. United States, *supra*. If the board denied the claim because of the insufficiency of the allegations under regulation 1625.2 then as we have stated above, it was incumbent upon the board to make specific findings to that effect. The conclusion that "no change [was] warranted" falls fatally short of this standard of specificity and therefore does not constitute an adequate basis in fact for the board's action.

 The appellee has argued, and the trial court presumed, that the board

did in fact consider the time of final emergence of Brown's alleged beliefs, found it to have preceded the induction order and thereby refused to reopen the classification under color of regulation 1625.2. Appellee points to that portion of the Form 150 in which Brown stated that his religious training occurred in Indiana long before the date of the filing of the form. Similarly, the trial court noted that the registrant's views "took form long before he was ordered to report for induction." However, it is the time of crystallization of a registrant's beliefs that is relevant, not the dates during which these beliefs took form and shape. What is meant by "crystallization" was clearly defined in *Maine* as the date at which a registrant's convictions take final form and become compelling upon him. Only when sincere beliefs dictate a registrant's conduct can it be said that conscientious objection has crystallized. The statement by a registrant that his religious training was received at a particular place and time obviously cannot fairly be construed as such a statement of conscience. The declaration that a registrant's formal assertion of conscientious objection is the "final development" of those views does indicate, prima facie, such a development of conscience and the crystallization of these alleged beliefs at a time subsequent to the issuance of the induction order.

As in *Mulloy*, "petitioner presented a nonfrivolous, prima facie claim for a change in classification based on new factual allegations which were not conclusively refuted by other information in his file * * *." 398 U.S. at 418, 90 S.Ct. at 1772.

The judgment is reversed and the case is remanded to the district court with directions to order respondent to return Brown forthwith to the District of Colorado and thereupon grant the writ releasing Brown from military custody.