UNITED STATES of America

v.

Gregory Paul NOONAN, Appellant.

No. 18031.

United States Court of Appeals, Third Circuit.

Argued Jan. 6, 1970.

Reargued Sept. 28, 1970.

Decided Nov. 18, 1970.

---

Marjorie Hanson Matson, Pittsburgh, Pa., for appellant.

Bernhard Schaffler, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Argued Jan. 6, 1970

Before BIGGS, ALDISERT and STAHL, Circuit Judges.

Reargued Sept. 28, 1970

Before BIGGS, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Following the first argument of this appeal from a conviction of refusal to submit to induction, we decided, based on the *de facto* reopening theory of Miller v. United States, 388 F.2d 973 (9 Cir.1967), that appellant was entitled to administrative review of the local board's purported refusal to reopen his classification. In a petition for reargument, the government conceded the vitality of *Miller* but urged its inapplicability as a defense to this criminal prosecution because the registrant did not seek a reopening of his classification until almost sixty days after the crime was committed. We granted reargument before the panel[1] to consider the government's contention.

Initially classified II–S, based on his status as a college student, appellant was reclassified I–A following his withdrawal from school in the fall of 1967. Shortly thereafter he underwent physical examination and was found acceptable for military service. He was then ordered to report for induction on March 28, 1968. He appeared at the induction center but refused induction.

On May 25, 1968, appellant requested and later received an SSS Form 150 (Conscientious Objector) from his local board, which he filed with the board some four months later on September 20, 1968. In the interim, on June 26, 1968, a grand jury returned an indictment against him, charging a violation of the Military Selective Service Act of 1967, 50 App. U.S.C.A. § 462(a).

Confronted with his belated claim for exemption, the local board sought advice from the Pennsylvania State Selective Service Director, asking what, if any, consideration should be given the claim. The director wrote that the local board "may reopen and consider anew" the claim "without regard to the fact that he has been indicted and without the aura of criminality."[2]

After receiving the requested instructions, the local board summoned appellant to appear for a personal interview on October 1, 1968. The minutes of the board's subsequent meeting establish that, in accordance with the directions from state headquarters, the board con-

---

1. Judge Stahl participated in the original decision, but died prior to the reargument. Judge Van Dusen was designated to sit as the third panel member.

2. That these directions permitted the local board to reopen appellant's classification even in the absence of "changed circumstances" is significant, for regulation 32 C.F.R. § 1625.2 provides that a classification "shall not be reopened after the local board has mailed * * * an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over

which the registrant had no control." See Scott v. Commanding Officer, 431 F.2d 1132 (3 Cir. 1970). The permission from state headquarters for the board to reopen if it believed that the "claim of conscientious objection has merit" was thus an express extension of the local board's authority. The state director has the authority to request a reopening, and the local board "shall reopen and consider anew the classification" when such request is made. 32 C.F.R. § 1625.3. By implication, the state director is also empowered to authorize, as well as request, a reopening.

sidered the merits of appellant's claim. The board determined (1) that there was "no change in status," (2) that his "claim does not have merit" and (3) that he "does not meet the criteria for C. O." Appellant was then informed that the board had determined "there was no change in your status over which you had no control, [and] therefore, did not reopen your classification."

Under the reasoning of Miller v. United States, *supra,* a court must look to the substance and not the form of the board's proceedings. Thus, board action which amounts to a de facto reopening of the classification under 32 C.F.R. § 1625.11 entitles the registrant to an appeal to the state board even though the local board purports to have refused a reopening.[3] In *Miller* the denial of the appeal was held to be a sufficient ground for reversing the conviction.

The government argues that there is a crucial distinction between the facts in *Miller* and those in the case before us— a distinction so fundamental as to make the difference between a valid legal defense in *Miller* and a legal irrelevance here: (1) Miller's request for the SSS Form 150 was made one day after he received notice that he was to be inducted at a future date, and the proceedings to reopen his classification were initiated before the date on which the alleged crime of refusing induction was committed; (2) appellant's request was not made until the induction day had long passed; his request for Form SSS 150 was not submitted until some sixty days after the commission of the crime.

Attaching critical significance to the timeliness of the institution of the reopening proceedings, the government urges that any defect in a selective service proceeding which occurred subsequent to appellant's refusal to submit to induction is not relevant to the issue whether a crime was committed on the day of the scheduled induction. Hence any subsequent selective service procedural infirmity cannot be interposed as a valid defense to the crime charged.

Although the government's position has been endorsed by a formidable array of precedents in the First, Sixth, Seventh, Eighth and Ninth Circuits,[4] appellant would have us construe 32 C.F.R. § 1625.14 to mean that any reopening of a classification by a local board after an induction day has come and gone, ignored by the registrant, automatically and retroactively cancels the induction order, voids any violation of the order, and places the registrant in the same position as if an order to report and submit had not been issued. Thus, appellant contends that the *de facto* reopening of his classification which occurred in October, 1968 had the effect of nullifying his March, 1968 induction order and vitiating his violation thereof.

We now turn to 32 C.F.R. § 1625.14: Cancellation of Order to Report for Induction or for Civilian Work by Reopening of Classification.

The reopening of the classification of a registrant by the local board shall cancel any Order to Report for Induction (SSS Form 252) or Order to Report for Civilian Work and Statement of Employer (SSS Form 153) which may have been issued to the registrant, *except that if the registrant has failed to comply with either of those orders, the reopening of the classification thereafter by the Local Board for the purpose of placing him in Class*

3. See United States v. Turner, 3 Cir., 421 F.2d 1251, 1252–1253, and cases cited therein.

4. United States v. Stoppelman, 406 F.2d 127 (1 Cir. 1969); United States v. Powers, 413 F.2d 834, 835 (1 Cir. 1969); United States v. Swierenga, 425 F.2d 696 (6 Cir. 1970); United States v. Smogor, 411 F.2d 501 (7 Cir. 1969); United States v. Seeverts, 428 F.2d 467 (8 Cir. 1970); Palmer v. United States, 401 F.2d 226 (9 Cir. 1968); Blades v. United States, 407 F.2d 1397 (9 Cir. 1969); Straight v. United States, 413 F.2d 263 (9 Cir. 1969); United States v. Blakely, 424 F.2d 1043 (9 Cir. 1970).

*IV–C or Class V–A shall not cancel the Order with which he failed to comply.* (Emphasis supplied.)

From this follows what appellant calls the "compellable inference" that reopenings for all other classifications automatically cancel prior orders with which there has been no compliance. Clearly, there is no explicit statement in this regulation that a subsequent reopening will cancel orders with which there has been non-compliance.

We find neither logical nor statutory support for appellant's conclusion. Apparently the purpose of the specific reference to Classes IV–C and V–A is an explicit warning that any registrant who acquires alien or overage status after the date of the scheduled induction may obtain no relief by seeking a reopening of his classification. To apply appellant's reasoning would be to conclude that all reopenings, except those which contemplate a IV–C or V–A classification, automatically cancel induction orders which have been violated. Other than the obvious havoc this procedure would wreak in the selective service system, this construction of § 1625.14 would mean that a subsequent reopening of a classification would have the legal effect of quashing an indictment before trial, or of arresting a conviction and perhaps setting aside a decision of the court of appeals, or, indeed, of the United States Supreme Court. This regulation simply does not invest local boards with such prerogatives of pardoning power.

Accordingly, we hold that appellant cannot convert his belated attempt for a reopening of his classification—an attempt which he did not undertake until May 26, 1968—into a legal defense to the crime he committed two months earlier on March 28, 1968.

█ Appellant also contends that he was denied due process because the local board's induction order called him out of turn. This allegation was exhaustively treated by the district court, sitting without a jury. Our independent review of the testimony, and our study of the trial court's findings, and of the analysis duly set forth in its memorandum opinion convinces us that the district court did not err.

The judgment of conviction will be affirmed.